On behalf of Mr. Densen and Mr. McCoy, on behalf of the people, we've got you. Mr. McCoy. May it please the court, counsel. The issue in this case involves three hearsay statements which were admitted at trial. First, Anita Bell, one of the co-defendants, testified as to what Torrin Giles and Gentino Robinson, two of the other co-defendants, told her in the car after the crime had occurred regarding the specifics of the crime scene. Second, Melanie Banner, Bell's sister, testified as to what Bell told her in Ms. Banner's apartment about the plan for the robbery. And third, Stacey Daniels, the victim's girlfriend, was allowed to testify to a prior consistent statement. The State concedes that this prior consistent statement should not have been admitted at trial. But turning first to the statements admitted under the co-conspirator exception, under this exception, statements are admissible if they are both made during the course of the conspiracy and made in furtherance of the conspiracy. But, counsel, how are we to review those if they've not been properly preserved? If the objection hasn't been properly preserved. The objection to the co-conspirator statement was preserved. The objection, the State filed a motion in limine. The defense filed a written response to that motion. The defense argued against admission of these statements at the pretrial hearing. And this issue was included in the post-trial motion. Well, what case law do you have that indicates that objecting to a motion in limine filed by the State is sufficient to preserve, along with the post-trial motion, to preserve this question, this issue? People v. Hudson, which is cited in our reply brief. It's an Illinois Supreme Court case. And it states, quote, an issue is preserved for an appeal if there has either been an objection at trial or it has been raised in a motion in limine, and it is also raised in the post-trial motion. Well, raised in a motion in limine. Here, the defendant did not file a motion in limine. The defense filed a written response to the State's motion in limine. Are those two different things? I don't believe so. I mean, the court has. Why are they two different things? Well, the trial court has the same opportunity. There is a very extensive motion in limine filed by the State, which included over 400 pages of exhibits, and there's an extensive pretrial hearing on this. So the judge had the opportunity pretrial to determine the submissibility, and then the judge had an opportunity after the trial to look and see if the sufficiency of his ruling. How about the Maldonado case? I'm not familiar with the Maldonado case. In the Maldonado case, is that not a case where the issue was a reply to the State's motion in limine, and the court found that they had preserved the issue? Again, I can't speak to the specifics of that case, but in either way, this issue has been litigated extensively prior to the trial and also after the trial. The State's motion, as well as the defense's response to that motion, contains references to these statements by Mr. Robinson and Mr. Giles, and this is what the court has already ruled on. So the purposes behind filing a motion for new trial were, or excuse me, a motion in limine, were achieved in this case. And turning to the substance of the co-conspirator statement, again, a co-conspirator statement must be made both during the course of the conspiracy and made in furtherance of the conspiracy. In regards to the co-conspirator statements, which we are objecting to in our brief, we don't dispute that they were made in the course of the conspiracy. Our objection is that they were not made in furtherance of the conspiracy and, therefore, are not admissible. And turning first to Giles and Robinson's statements to Bell, again, these were made in the car after the crime had been committed, and they were not made in furtherance of the conspiracy because they were simply mere narration of past events that had already occurred, which didn't further any objective of the conspiracy. It's important to remember that at this point the crime had already been committed, obviously. The conspiracy was in the concealment phase, and we're not disputing that. And Bell's only responsibility in this concealment phase was the getaway driver. She was to drive Giles and Robinson to Ms. Banner's apartment. And at this point she knew, obviously, what their plan was. She had escorted them to Mr. Juggins' apartment, and she'd been told that Mr. Juggins had been killed. So for these two co-defendants to then tell her the specifics of what happened at the crime scene, that didn't advance any purpose of the concealment. It didn't make her a better getaway driver. It didn't help her more successfully navigate the streets of Belgium. And so in this way, it did not further the conspiracy. Well, she aided them, so isn't that in furtherance of the conspiracy? But the statements must be made to further an objective of a conspiracy. Well, the objective of the conspiracy, would it not be to get away with the crime? Yes, but these statements did not help her help them get away with the crime in any way. A similar example occurs from the Illinois Supreme Court case of People v. Parmalee, in which during the concealment phase, just as in here, a co-defendant who did not testify at trial told a co-defendant who did testify at trial the specifics of what had occurred at the murder scene. The co-defendant who testified at trial did not actually personally witness the murder. And the Illinois Supreme Court held that that was not in any way in furtherance of the conspiracy. Also, interestingly, a parallel between this case and Parmalee. In Parmalee, the Supreme Court recognized that many non-lawyers are unfamiliar with the concept of criminal accountability. And they recognized that the co-defendant in that case was, although he admitted to being accountable for first-degree murder, he was simply trying to shift the blame to the defendant in that case. And as well as in our case, Mr. Giles admitted on the stand that he was not familiar with the concept of accountability. And his statement, as well as Mr. Robinson's statement, both were pointing the finger at the defendant and trying to shift the blame in that way. So these statements were not made in furtherance of the conspiracy and don't qualify under the co-conspirator's exception. How about the statements being made as excited utterance or spontaneous declarations? Well, they would also not qualify under that exception because at the time they were made, the stress of the moment had not so overcome Mr. Giles and Mr. Robinson's capacity to recollect on the evidence and essentially their ability to fabricate the evidence to qualify under the submission. Well, this was just a very short time after this happened, though. Yes. We're talking about not very much time at all. Why wouldn't the stress have continued? Well, we don't know the exact time frame. There was enough time for them to leave the crime scene, to go to the car, to call Ms. Bell to decide where they were going to meet her, to go to this location and to decide where we're going to go. So, again, leaving aside the time frame, there was – they left the location. There was no indication that these two men were emotionally upset. They were not screaming or crying. But she's the first person that they told anything to. Doesn't that make a difference? Perhaps it would make a difference if when they first saw her, the first words that came out of their mouth, they were screaming, Juggins is dead. But that's not what we have here. And if we look at some of the other statements they made, they also said, you know, that Giles was going to wipe down the weapons to clean off the fingerprints and that Mr. Robinson said he didn't think the state had a case because he picked up the spent shell casing from the weapon that he'd fired. So they obviously were engaged in critical thinking, and they were thinking of ways to conceal their activities. And furthermore, the substance of the actual statements we're objecting to, they were retelling the events. They weren't – again, it was not just a simple shouting, Juggins is dead. They're looking at sort of a recap of what happened. And in that way, they had to put the events together, organize them in their mind, and that shows that the stress of the situation did not make it a spontaneous declaration or an excited utterance. And for these reasons, it also doesn't fall under that exception. Turning, unless there's other questions, to the second set of co-conspirator statements, those being Bell's statements to Banner at the apartment prior to the crime, these also were not offered in furtherance of the conspiracy, and that's true for two reasons. First, Ms. Bell was revealing the conspiracy to a non-conspirator, in this case Ms. Banner, who the other conspirators were actively trying to hide their activities from for much of the night. And secondly, Bell's statements also – her statements were that she did not want the conspiracy to come to fruition, so these statements obviously then were not offered to further the conspiracy, which she didn't want to happen. On this point, the State brings up an alternative basis in its brief, the state of mind exception. That exception also does not apply because most of what Ms. Bell said and most of the statements which we are objecting to were not related to her state of mind. They were a summary of what Mr. Giles had told her about the plan for the crime. And secondly, even the parts of her statement which did relate to her state of mind were simply not relevant to the ultimate question of Mr. Denson's guilt or innocence. And for this reason, they don't fall under that exception either. And the introduction of these statements thus wasn't proper, and along with Ms. Daniels' prior consistent statement resulted in a verdict that this court cannot have confidence in. And the reason for this is because we're dealing with a somewhat unique case in that there was already one trial, the first trial where Mr. Denson was tried at. This evidence did not come in, the evidence we're objecting to, and the jury was hung 11 to 1 in favor of not guilty. So we don't have to speculate about harmless error. A reasonable jury could and in fact did have questions about Mr. Denson's guilt. And furthermore, the introduction of this evidence… There were some slight other variations between the evidence. A single nail caused King John, I think it was, to lose the entire kingdom. So maybe something as slight as a nail might have changed the result of these two trials. Yes, but it is because these issues have been preserved. It's the State's burden to prove that they were harmless beyond a reasonable doubt. And if you look back to the first trial, essentially the same evidence and for the most part the same witnesses are presented. There's not any new major evidence that gets revealed between the two trials. You've got two different juries, counsel. I mean, the argument doesn't seem terribly persuasive, but anyway, go ahead. Well, the second way that this evidence was prejudicial was that it allowed the prosecution to repeat Mr. Giles' story and put it in the mouth of two different witnesses, specifically Ms. Bell and Mr. Robinson. Now, Mr. Robinson was a co-defendant. He did not testify at trial, but through the use of this hearsay statement, he was in effect testifying, and the defense did not have the opportunity to cross-examine him. The Illinois Supreme Court in Hernanda's case recognized that this is not a minor error. In fact, they said, quote, it would be difficult to imagine any evidence that would be more prejudicial than the inculpation of the defendant by a non-testifying co-defendant. You're submitting that this violates Crawford, aren't you? Yes. The Crawford issue, this case really doesn't turn on a Crawford violation. If it fits under the co-conspirator's statement, then it doesn't violate Crawford, and if it doesn't fit under the co-conspirator's exception, rather, then you don't have to look at Crawford because it is inadmissible. But the spirit of Crawford is really sort of what's at issue here. We have a witness, a co-defendant that's in effect testifying, which the defense does not have the opportunity to confront. And that is the prejudice here. It's the prejudice of Mr. Giles' story being repeated through Bell and through Robinson and then there, it should be Bell's hearsay testimony being repeated multiple times during the state's closing argument. And the danger here is that the jury simply believes Giles' testimony based on this sheer repetition and not based on looking at the contradictions and the other problems in the state's evidence. And it's for this reason that the evidence here was extremely prejudicial. And unless those are the questions, for these reasons, Mr. Denson would ask that this court reverse his conviction and remand to case for the trial. Thank you. Thank you. You'll have an opportunity to make the ruling. Thank you. And it was Henry III, not King John. I was going to say something. Yes. I remember your footnote from the Rebecca case. Good morning, Your Honor. May it please the Court. Rather than paint with a broad brush, I'd like to go and cover each statement individually so that we can hone in on exactly what is at issue here and what is not. First, let's take it in terms of the sequence of events. You have the plan for the robbery developing. Kenita Bell drives with the stick-up crew, basically, to the first location, Bonds' house. They find that Bonds isn't there. They then move on to Juggins' house. Now, at that point in time, the plan clearly was that Bell would pick out whose house it was. The three of them would go ahead and commit the armed robbery, and she returns to her sister, Melanie Banner's house. When she's at Banner's house, while the defendant and his two cohorts are committing the home invasion, Banner overhears Bell make this statement. The statement that she was glad she wasn't able to find Bonds, her ex-boyfriend, because she didn't want to set him up to get robbed. She was also, however, friends with Juggins and was clearly moved when she learned that Juggins had died. So she does have allegiances sort of all over the place, but nevertheless, she was part of the plan, part of the conspiracy, and as I argued in brief, whether she went through with it with great remorse or serious enthusiasm, it doesn't really matter. The point is, she was a co-conspirator from the beginning, and any statement she made, it doesn't matter that Banner wasn't part of the conspiracy. Any statement any co-conspirator makes is an admissible co-conspirator statement, and it's admissible against all of them. It's admissible against all of the co-conspirators, so the fact that Banner may have been or was not necessarily a member of the conspiracy carries no weight. This Court need look no further than Justice Bowman's opinion from People v. Readout or from any of the number of cases where we have a police officer who's in a situation where he, the officer is, he or she is part of the conspiracy. We know that the officer doesn't intend to go through with the conspiracy. We know that they're not actively willing the conspiracy towards fruition, but nevertheless, it's a statement that's made by a co-conspirator. Anybody can be, as long as the declarant is a co-conspirator, any person who overhears that statement can come into court and testify about it. So I think the defense has an extremely narrow and inaccurate view of what a co-conspirator statement actually is. Your opponent talks about the, he says it's really not a Crawford violation, so to speak, but it is, in my words, a double hearsay, if you will, for one to testify what the defendant said to somebody else. I'm sorry, you mean with respect? Because the defendant's Crawford argument is about the second group of statements, the statements that Giles and Robinson made to Bell in the car. Right. Okay. With respect to that issue, I have maybe a simpler way of dealing with it. The defendant said, or at least the defense counsel said, well, the whole case doesn't really turn on that because it's hearsay or it might not be hearsay. I have a simpler way of answering that. As far as the Crawford issue is concerned, what matters is whether or not it's testimonial. So to the extent that it might even be granted that it's hearsay or double hearsay even, the point is that the defense had an opportunity to cross-examine the witness who overheard the statement. So Kenita Bell was there at trial. They had the opportunity to cross-examine her and did so vigorously regarding what she heard, when she heard it, what the circumstances were, et cetera. And then they had Giles. Giles had testified before Bell, but Giles had testified similarly, and their testimony has the ring of truth to it. It corroborated each other. What is your response to the comment that only statements made in furtherance of the conspiracy are admissible? Well, I think that's a very ñ I think the defense has staked out a very narrow position on what it means to further a conspiracy. I think there's a difference of whether or not we're actively moving the conspiracy towards completion. I know we just got done talking about attempt crimes, and I think the continuum between preparation and completion is certainly an interesting way to evaluate it. But the bottom line is, as long as the statements are made during the course of, during the pendency of the conspiracy, and further what is ostensibly an objective of the conspiracy, in this case to get away with it, as is part and parcel of most conspiracies, I don't see how these statements did not further the conspiracy. They advised Kenita Bell of what went on and why it was necessary for her to pick them up, as opposed to the defendant. I mean, clearly the plan originally was Bell was going to go back to Banner's house, wait there at her sister's house. The three of them were going to come back with the proceeds of the robbery, without the proceeds, whatever. But the three of them were planning on coming back there. It's only when things go wrong in Juggins' apartment that Giles calls Bell. Bell gets the phone. She rushes out. Her sister testified that there was some type of an emergency. So, I mean, it was what went wrong in the apartment, in Kyle Juggins' apartment. It was the fact that Juggins had been murdered. It was the fact that Giles knew that Juggins was a friend of Bell's, and obviously knew that she would be somewhat distraught by that information. So I think advising her that they had killed Juggins moments after the murder occurred, and the robbery itself was unsuccessful, to me, that is, if it's not in the concealment phase, I frankly don't know what is. At that point, they were on their way back to Banner's house for Giles to go ahead and clean up, to clean off the guns, clean off the fingerprints, et cetera. So where the line is drawn between when this conspiracy ended and when the concealment phase began, I think that's a very, it's certainly a very interesting question, but I think it's a little more than academic because at all points in time, we're in Elgin fleeing from the conspiracy. So I don't see how those statements aren't made in furtherance of the conspiracy. They advised Bell of what went on. They told her, essentially, the rationale of why her role had changed in the conspiracy. She went from being an information provider to a getaway driver. In United States v. Hittal, doesn't that basically set out under what circumstances kind of conspiracy statement had come in?  In a broad sense. I don't know if that's a McLaren's question to you, where they identify co-conspirators and their roles in the conspiracy or to inform other conspirators of the activity and the status of the co-conspiracy. So I think that— Oh, you know, I actually had not taken that view of Hittal. I, you know, in retrospect, I probably jumped on the first proposition, just about it being the changing roles within the conspiracy because I thought that to be a little bit closer to Illinois law. In any event, I think clearly those two statements— sorry, the statements made by Childs and Robinson to Bell while they were in Bell's car, if they were not co-conspirator exceptions, and I submit to you that they are, if they were not co-conspirator exceptions, they were certainly excited utterances. I mean, this was literally moments after the murder had occurred. They knew what the impact would be. They knew that Bell was a friend. She had dated Bond. She—that Juggins was her friend. I mean, in short, these are textbook excited utterances. So I don't think the defendant is on very strong grounds with that argument. What's your position with respect to Forfeiture? I think that—I can see it in both ways. I think that Maldonado is—I think that Maldonado is obviously the law of the land, and it's what we're bound to follow. I can understand the defendant's argument where he's saying it's not as though the State would be caught off guard that we would be arguing it, and that's not our basis for asserting Forfeiture. Our basis for asserting Forfeiture is that the defendant did not meet the procedural requirements necessary to preserve the argument. But Maldonado says that he did. Well, Maldonado says that his response to the State's motion of limine would not be sufficient to preserve it. Hudson, in the earlier case, takes the contrary view. I'm saying I can see the defendant's position that we're not caught off guard. The motion of limine covered the Kofi Sperder statements. It was a hotly litigated issue. I would say, though, that in this case it's a little bit unique because the motion of limine is written in very broad terms, and then the roughly 400 pages that the defendant alluded to of different transcripts and testimony didn't exactly include the statements that are at issue now on appeal. It didn't include banner statements to what she overheard her sister say on the phone in those 400 pages. So I'm saying whether it's forfeited or not, I think it is forfeited because the defense did not make a trial objection. They didn't file a motion of limine of their own. I will say that most of the concerns underlying the Forfeiture rule are at an ebb because we knew that this was going to be an issue here. Wait a minute. Go back to Maldonado. Maldonado says that if you file a reply brief, a reply to the state's motion of limine, that you preserve the issue. Are you telling me it's the other way around? I'm sorry, no. Maldonado, the defendant cited Hudson. Maldonado cites Hudson. Maldonado cites Hudson, right. Hudson being the controlling case. Correct. I'm sorry. Let me put it differently. It's the difference between addressing it under plain error or harmless error in this case. I think I address them all under harmless error. If this court wants to overlook what I would submit as defense forfeiture, I obviously would have no problem with that given the way the case has been briefed. You still think the results will come out the same way? Yes, absolutely. I mean, it's the difference between the difference. And let's just be clear about that. So to the extent that it's forfeited, fine, this court doesn't review it. To the extent that it's not forfeited, we're choosing between harmless error versus plain error here, and I want to be very clear that it's only the first prong of plain error that the defendant's arguing. He's not arguing that this was a substantial, a violation of a substantial right that challenges the integrity of the judicial system. His only argument is the first trial turned out differently, so the evidence in this trial must have been closely balanced. Well, there are some significant differences between the first trial and the second trial, namely two different witnesses. Genorge Robinson and Kimmy Alton Nix did not testify at the first trial. They were the link between the defendant and the automobile that was spotted by Elgin police fleeing from the crime scene, and Genorge Robinson, the defendant's sort of on-and-off girlfriend, she provided critical testimony regarding the defendant's nickname and establishing the defendant's identity as part of this conspiracy. So to the extent that there is a first prong plain error argument, I would submit that it's patently insufficient. To the extent that the defendant did, in fact, preserve the issue, and I can certainly see it that way, I think it's at most harmless error. I don't see it as error to begin with, though. Last, as far as harmless error is concerned, I don't think that any of the evidence here, I don't think that if one statement was in or one statement was out or whatever, I don't think that the defendant has made the showing that this trial would have ended up any differently. The evidence against this defendant was overwhelming. The crime itself was extremely violent, and I don't make that statement lightly because it's a conspiracy here that led to an act of extreme violence. The state's evidence showed not only that the victim died in his apartment next to his girlfriend and his 15-month-old son, but that he died under extremely violent, so he died violently. And in short, not only do I not think that there was no error in this case, certainly no plain error or that any error was harmless, but I point out that the victim died violently only because these issues were raised below. The challenge to the conspiracy itself that resulted in the victim's death is, in my opinion, not on firm grounds, and ultimately I think this Court should affirm. Thank you. Thank you. Mr. McCoy. Thank you, Your Honor. Counsel said that any co-conspirator statement is admissible against any other co-conspirator. Obviously, Illinois rule of evidence 801D2E requires that it be made both during the course of the conspiracy and in furtherance of the conspiracy. And just to repeat my argument from the first, we're not challenging that it's during the course of the conspiracy. Clearly, the statements were relating to from Giles and Robinson to Bell were made during the concealment phase, but they were not made in furtherance of the conspiracy. And Your Honor cited Hitau. However, that case is not precedential. That's a Sixth Circuit federal case. And, in fact, the idea that this basic information flow always follows the conspiracy has been rejected in Illinois, especially by the Parmelee decision. In that case, you have the same information flow from a defendant, a co-defendant that saw the crime, to a co-defendant that didn't see the murder and saying how the crime had changed and what exactly happened. And yet the Illinois Supreme Court held that that was not sufficient to be in furtherance of the conspiracy. And, in fact, the Miller case, which we cite in our brief, also cites Colombo, which is 118, Elap, 3rd, 882, which states that, quote, a mere narrative of past occurrences does not further the objective of concealment. And so simply this mere narrative is not enough to further the conspiracy. And, again, Bell already knew that there was an emergency. She knew the plan had changed. She knew Mr. Juggins had been killed and that this wasn't a simple robbery anymore. But the actual specifics of what happened and who dealt the fatal blow did not further the objective of concealing the conspiracy, which was the only objective remaining for the conspirators. How is this not harmless there? Why do you propose to us that this is not harmless there? Well, again, because it presents a co-defendant that did not testify at trial and is now pointing the finger at Mr. Denson, the Illinois Supreme Court. Again, I go back to that Hernandez case. It's difficult to imagine any evidence that would be more prejudicial than this. And furthermore, there were many contradictions in the state's case, particularly between Mr. Giles and Stacey Daniels, the only two eyewitnesses who were in the bedroom that night to testify. And the contradictions between their testimony was kind of glossed over by this sheer repetition. And the fact that Giles' statement was heard not just from him but then from Ms. Bell and then from Ms. Bell putting it in the mouth of Mr. Robinson. So by just hearing it over and over again, the jury was overwhelmed by this evidence. And they perhaps decided it based on just hearing the evidence multiple times rather than looking at some of the serious contradictions, again, between Bell and Daniels and also between Giles and Daniels and also between Giles and Bell. So the evidence in this case, there were problems with the state's evidence, which could result in the jury having doubts about Mr. Denson's guilt. And so for these reasons and those mentioned before, we would just ask that this court reverse Mr. Denson's conviction and remain as case for the trial. Thank you. Thank you. The case will be taken under advisement.